UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

S.M., individually and as parent and next
friend of F.M., a child with a disability,

                Plaintiff,

        -against-                                1:11-CV-1419 (LEK/RFT)

TACONIC HILLS CENTRAL SCHOOL
DISTRICT,

                Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff S.M. ("Plaintiff") brought this action individually and as parent and next friend of F.M. for violation by Defendant Taconic Hills Central School District ("Defendant") of F.M.'s right to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. See generally Dkt. No. 1 ("Complaint"). Now before the Court are both parties' Motions for summary judgment. Dkt. Nos. 14, 15-16.

**II.    BACKGROUND**

The undisputed facts are as follows.[1]

**A. The January IEP**

F.M. is an autistic child who was placed in Defendant's elementary school pursuant to an individualized educational program ("IEP") agreed to by the parties on January 27, 2010 ("January

---

[1] Compare Dkt. Nos. 14-2 ("Plaintiff's Facts"), 15-1 ("Defendant's Facts"), with Dkt. Nos. 18-15 ("Response to Plaintiff's Facts"), 19 ("Response to Defendant's Facts"); compare also Compl., with Dkt. No. 5 ("Answer").

IEP").[2] Two months later, the parties agreed that F.M.'s assigned teacher should be removed following an incident. Defendant encouraged Plaintiff to keep F.M. in school for speech, physical, and occupational therapy per the January IEP, but Plaintiff declined to do so until a replacement teacher was provided to fulfill the program.

### B. The April Complaint

On April 22, 2010, F.M.'s parents filed a complaint ("April Complaint") with the New York State Education Department for violation of the IDEA by failing to implement the January IEP.[3] On June 6, 2010, the Impartial Hearing Officer ("IHO") hearing the April Complaint issued an interim order confirming that the January IEP was F.M.'s "pendency placement," i.e., his placement while resolution of the complaint remained pending. F.M. did not return to school that year.

### C. The August IEP

On May 19, June 23, and August 31, 2010, Defendant's Committee on Special Education ("CSE") and Plaintiff held meetings to develop F.M.'s IEP for the 2010-2011 school year. At the first meeting, the chairperson of the admissions committee at the Wildwood School ("Wildwood"), a private school approved for the placement of autistic children, opined that, based on her observation of F.M. at home and documentation provided by Defendant, Wildwood could meet F.M.'s educational needs. She also noted, however, that Wildwood's roster for the 2010-2011 school year was full in

---

[2] For a description of the January IEP, see *infra* note 5 and accompanying text.

[3] The April Complaint is the basis of another action pending before the Court, No. 11-CV-1085. The January IEP on which the April Complaint was based was the product of an October 8, 2009, consent decree between the parties, which is the basis of a third action filed with the Court, No. 09-CV-1238. A fourth action, No. 12-CV-1014, relates to F.M.'s IEP for the 2011-2012 school year.

2

F.M.'s age group and that he would go on a waiting list, possibly for an entire year.[4] F.M.'s parents declined to apply to Wildwood because it was too far away even if there were an opening, and Plaintiff requested at the second meeting that Defendant continue F.M.'s pendency placement under the January IEP.

At the third meeting, the CSE recommended that F.M. be placed at Wildwood in a 6:1+3 class (six students to one teacher and three aides) for 360 minutes per day with the same daily 1:1 assistance and bus attendant, weekly 1:1 and group physical and occupational therapy, weekly and daily 1:1 speech therapy, thrice-weekly group physical education, and semi-monthly parent training as under the January IEP ("August IEP").[5] No one from Wildwood was present at the meeting, but its admissions chairperson restated via letter her belief that F.M.'s needs were within the school's mission. The CSE chairperson reported that the Commissioner of Education had approved transportation to Wildwood for F.M. if his parents agreed, but Plaintiff reaffirmed that she would not apply to Wildwood and that she wished to continue F.M.'s pendency placement. Classes were scheduled to begin at both Wildwood and Defendant's schools on September 8, 2010.

On September 4, Defendant's elementary school principal e-mailed F.M.'s parents to say that Defendant had assembled a team to implement F.M.'s pendency placement. The principal also offered to meet with F.M.'s parents on September 7 to discuss the program. On the afternoon of September 7, F.M.'s parents notified the principal that they would not be at the meeting and requested information on the team, which the principal sent via e-mail. The next day, F.M.'s father accompanied him to

---

[4] Defendant's superintendent also stated, in a May 28, 2010, letter to the state education department, that Wildwood was full for the summer and the following year.

[5] The January IEP placed F.M. at Defendant's school in a 6:1+1 class for 200 minutes per day but was otherwise identical.

3

school, intending to remain with him for the day. The principal told the father he could not stay but asked that F.M. remain. F.M.'s father left and took F.M. with him. Plaintiff later e-mailed the principal to say that F.M. had been diagnosed with Lyme disease and would remain at home.[6]

On September 21, the CSE chairperson advised Plaintiff that she should complete the Wildwood application if she wanted a day-treatment program for F.M. Plaintiff wanted instead an interim program delivered at their home.[7] The CSE chairperson denied Plaintiff's request two days later because Defendant did not believe arranging for an at-home program would be appropriate. The CSE chairperson also asked F.M.'s parents to contact the principal about returning F.M. to his pendency placement, but they did not do so.

**D. The September Complaint**

On September 28, 2010, F.M.'s parents filed another complaint with the New York State Education Department charging that the August IEP failed to provide F.M. a FAPE. Dkt. No. 16-12 ("September Complaint"). Robert Briglio, the IHO hearing the September Complaint ("IHO Briglio"), issued his decision on July 5, 2011. He found that the August IEP failed to offer F.M. a FAPE in a timely manner because no evidence indicated that an appropriate seat at Wildwood had become available by September 8, 2010, when the school year began. Accordingly, he ordered, *inter alia*, that F.M. be placed at Defendant's school under an IEP otherwise consistent with the January and August IEPs but with the addition of recommendations for the use of sign language and for measures to

---

[6] Plaintiff confirmed on September 29, 2010, that F.M. continued to suffer from Lyme disease, and Defendant received a note from F.M.'s physician on October 5, 2010, stating that F.M. had increased symptoms of Lyme disease and recommending home studies.

[7] Defendant had provided F.M. an at-home program in fall 2009, as a result of the hearing leading to the October 8, 2009, consent decree, see supra n.2, and prior to the development and implementation of the January IEP. On the advice of F.M.'s physician, see supra n.6, Defendant reinstated a similar program on October 18, 2010.

address F.M.'s behavioral problems, including the provision of a board-certified behavioral analyst.

### E. The SRO Decision

Defendant appealed IHO Briglio's decision to the New York State Education Department's Office of State Review on August 8, 2011, on various grounds including IHO Briglio's findings regarding a denial of a FAPE. F.M.'s parents cross-appealed seeking an award of compensatory services that IHO Briglio had denied. The state review officer ("SRO") hearing the appeal issued his decision on September 12, 2011. He held that there was no evidence that the August IEP constituted a denial of a FAPE because, although Defendant did not provide an IEP identifying an immediately available placement, it was prepared to provide F.M.'s pendency placement pursuant to F.M.'s parents' request. Accordingly, he annulled IHO Briglio's decision and dismissed the cross-appeal.[8]

### F. The Instant Action

Plaintiff now asks the Court to vacate the SRO's decision, find that Defendant denied F.M. a FAPE for the 2010-2011 school year, award compensatory services, and order that Defendant provide F.M. the modified program set forth by IHO Briglio. See generally Dkt. No. 14-3 ("Plaintiff's

---

[8] In its Response to Plaintiff's Facts, Defendant "[d]enies that the SRO annulled the IHO's finding of a denial of FAPE." Resp. to Pl.'s Facts ¶ 50; cf. Pl.'s Facts ¶ 50 ("As such, the SRO annulled the IHO's finding of a denial of FAPE."). But Defendant admitted this in its Answer. Compare Compl. ¶ 60 ("As such, the SRO annulled the IHO's finding of a denial of FAPE."), with Ans. ¶ 60 ("Admits the allegations in Paragraph '60.'"). Moreover, Defendant cannot deny this. See Dkt. No. 16-17 ("SRO Decision"), at 19 ("IT IS ORDERED that the portion of the impartial hearing officer's decision . . . that determined that the district failed to offer the student a FAPE for the 2010-11 school year is annulled."); cf. Def.'s Facts ¶ 115 ("The State Review Officer issued his decision . . . annulling the decision of the Hearing Officer . . . ."); Dkt. No. 18 ("Defendant's Opposition"), at 8 ("[T]he SRO . . . annulled the IHO's finding the District failed to offer the Student a FAPE for the 2010-2011 school year . . . ."). Accordingly, the Court will consider it undisputed that the SRO annulled IHO Briglio's finding that the August IEP denied F.M. a FAPE.

5

Motion"). Defendant opposes Plaintiff's requests and asks that Plaintiff's Complaint be dismissed.[9] See generally Dkt No. 15-2 ("Defendant's Motion").

## III. LEGAL STANDARD

A motion for summary judgment in an IDEA action "differs from an ordinary summary judgment [under Federal Rule of Civil Procedure 56] in that the existence of a disputed issue of fact will not defeat the motion." Student X v. N.Y.C. Dep't of Educ., No. 07-CV-2316, 2008 WL 4890440, at *3 (E.D.N.Y. Oct. 30, 2008). An IDEA summary judgment motion instead merely "serves as a pragmatic procedural mechanism for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." Lillbask v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005) (internal quotation marks omitted); see also Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995) ("Though the parties [in an IDEA action] may call the procedure 'a motion for summary judgment' . . . , the procedure is in substance an appeal from an administrative determination, not a summary judgment.").

Accordingly, a federal district court engages in "modified *de novo* review" of an SRO decision, Student X, 2008 WL 4890440, at *3, to see if a preponderance of "objective evidence" indicates "whether the child is likely to make progress or regress under the proposed plan." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 113 (2d Cir. 2007). A court's role is, however, "circumscribed," id. at 112, and "by no means an invitation to the courts to substitute their own notions

---

[9] Defendant argues in part that this case is moot because F.M. now has a new IEP and pendency placement. The case is not moot for the same reasons discussed in Student X v. New York City Department of Education, No. 07-CV-2316, 2008 WL 4890440, at *12-15 (E.D.N.Y. Oct. 30, 2008), namely that it is "capable of repetition, yet evading review," and Plaintiff seeks compensatory benefits.

6

of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982); see also Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998) ("[T]he judiciary generally lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."). A court must therefore show "substantial deference to state administrative bodies on matters of educational policy," Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191 (2d Cir. 2005), and give "due weight" to the administrative proceedings, particularly where they have been "thorough and careful." Walczak, 142 F.3d at 129. This due weight does not apply to issues of law. Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1122 (2d Cir. 1997).

"[A] school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." Cerra, 427 F.3d at 195 (internal quotation marks omitted); see also Walczak, 142 F.3d at 130 ("IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP."). The IDEA does not "require[] New York to maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children." Rowley, 458 U.S. at 200; see J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 950-51 (9th Cir. 2009) (holding that later amendments to the IDEA did not supersede Rowley). Rather, the inquiry proceeds as follows:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

Rowley, 458 U.S. at 206-07. The burden of proof lies with the party seeking relief. See generally

Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49 (2005).

## IV. DISCUSSION

### A. Scope of Review

F.M.'s parents did not raise objections to the substance of the January or August IEPs in the September Complaint; rather, they alleged procedural defects in the formation of the August IEP and the assignment of F.M. to Wildwood. See generally Sept. Compl. Because there is no evidence that the scope of the September Complaint was expanded through amendment or with Defendant's consent, IHO Briglio could not hear issues relating to the substance of the January or August IEPs, see 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice . . . unless the other party agrees otherwise."), and the SRO therefore was correct to annul IHO Briglio's decision that the content of the IEPs was inappropriate. See Dkt. No. 16-17 ("SRO Decision"), at 16-17; see also R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 187-88 & n.4 (2d Cir. 2012) (explaining why an IDEA complaint must list all alleged deficiencies in an IEP).

### B. Compliance with IDEA Procedures

The IDEA instructs that

[i]n matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies--

    (I) impeded the child's right to a free appropriate public education;
    (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
    (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii).

*1. The August IEP*

Plaintiff argues that several deficiencies in the process of creating the August IEP constitute a violation of the IDEA, namely: (1) that Defendant did not ensure F.M.'s parents were informed of critical details of the Wildwood program; (2) that no one from Wildwood attended the August 31, 2010, meeting; (3) that the special education teacher present at the August 31 meeting left the meeting early; (4) that the special education teacher present at the August 31 never was and was not intended to be F.M.'s teacher; and (5) that no general education teacher was present at the August 31 meeting. See Pl.'s Mot. at 12-13. Because Plaintiff's allegations regarding the special education teacher and the general education teacher were not raised in the September Complaint, see generally Sept. Compl., nor added by amendment or with Defendant's consent, IHO Briglio could not properly have heard them, and the SRO properly declined to address them. See 20 U.S.C. § 1415(f)(3)(B); SRO Decision at 17 n.10. Therefore, the Court addresses only Plaintiff's claims based on the absence of a Wildwood representative at the August 31 meeting and the failure of Defendant to convey details of the Wildwood program to F.M.'s parents.

a. Absence of a Wildwood Representative at the August 31 Meeting

Plaintiff points to the absence of a Wildwood representative at the August 31 meeting as a violation of a New York regulation requiring the participation of such a representative in CSE meetings when "the recommended placement is to be in a school operated by an agency or school other than the school district in which the student would normally attend if the student did not have a disability." N.Y. COMP. CODES R. & REGS. tit. 8, § 200.4(d)(4)(i)(a). The August IEP was developed over a series

of three meetings, however, and Wildwood's admissions chairperson participated in the first one.[10] Therefore, even if her absence from the August 31 meeting constituted a procedural violation, it did not rise to the level of denying F.M. a FAPE under any of the IDEA's three tests.

### b. Details of Wildwood's Program Not Conveyed to F.M.'s Parents

Plaintiff's last procedural argument is that Defendant did not ensure F.M.'s parents were informed of critical details of the Wildwood program. Plaintiff focuses on questions and concerns expressed by F.M.'s parents and their attorney at the August 31 meeting regarding Wildwood's ability to implement the August IEP, including class size and student-teacher ratio. Because the other CSE members in attendance at the August 31 meeting did not address those questions and concerns, and no Wildwood representative participated in that meeting, Plaintiff contends that her and her spouse's opportunity to participate in the decisionmaking process regarding the provision of a FAPE to F.M. was significantly impeded.

Plaintiff does not point to, nor is the Court aware of, however, any specific procedural requirement in the IDEA that Defendant has thus violated. To the extent Plaintiff is arguing an abstract "fairness" or "due process" violation, F.M.'s parents had notice as of at least the May 19 meeting that the CSE was considering recommending F.M. be placed at Wildwood and that a final determination of Wildwood's ability to meet F.M.'s needs could be made only if F.M.'s parents completed the intake process, which they did not do. See Def.'s Facts ¶¶ 14-16; Pl.'s Facts ¶ 15. Defendant's failure to ensure at the August 31 meeting that F.M.'s parents were informed of the details of the Wildwood

---

[10] The New York regulation provides that if the "representative cannot attend, the school district must use other methods to ensure participation by the private school . . . , including individual or conference calls." N.Y. COMP. CODES R. & REGS. tit. 8, § 200.4(d)(4)(i)(a). The letter from the Wildwood admissions chairperson that the CSE chairperson read at the August 31 meeting likely does not meet this requirement.

program therefore did not amount to a significant impediment to F.M.'s parents' opportunity to participate in the decisionmaking process.

### 2. *Assignment to Wildwood*

Assignment of F.M. to Wildwood was nevertheless improper. First, at no time was there a seat actually available to him, rendering his parents' failure to complete the intake process moot; and second, the Commissioner's grant of the necessary transportation waiver was conditioned on the parents' approval, which they declined to give. Because F.M. therefore could not actually be assigned to Wildwood, it was *per se* incapable of implementing his IEP.[11]

Defendant concedes that it made a procedural error in recommending that F.M. be placed at Wildwood, but argues that it simply failed to present this recommendation as "conditional." Plaintiff counters that conditional placements are invalid under the IDEA. Although "[r]etrospective evidence that alters [an] IEP is not permissible," R.E., 694 F.3d at 188, and Defendant therefore cannot now seek to change the plain written terms of the August IEP, "there is no requirement in the IDEA that the IEP name a specific school location." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 420 (2d Cir. 2009); see also R.E., 694 F.3d at 191-92 ("The Department may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP."). "'Educational placement' refers to the general education program-such as the classes, individualized attention and additional services a child will receive-rather than the 'bricks and mortar' of the specific school." Id. at 419. The assignment to Wildwood, therefore, while included with the August IEP, was not itself part of that IEP;

---

[11] That Wildwood ultimately determined nearly a year later, on May 9, 2011, that it could not meet F.M.'s needs, see Pl.'s Mot. at 12, does not, as Plaintiff argues, retroactively render the Wildwood placement invalid. See R.E., 694 F.3d at 186 ("[T]he IEP must be evaluated prospectively as of the time of its drafting . . . ."); cf. id. at 188 ("Parents . . . cannot later use evidence that their child did not make progress under the IEP in order to show that it was deficient from the outset.").

11

rather, Wildwood was the location at which Defendant intended that IEP to be implemented. As noted *supra*, however, Wildwood was incapable of implementing the August IEP, and school districts do not "have carte blanche to assign a child to a school that cannot satisfy the IEP's requirements." Id. at 420. Defendant therefore might have denied F.M. a FAPE if it had insisted upon assignment to Wildwood as F.M.'s only option.

At the same time, however, the parties were engaged in hearings relating to the April Complaint, and Defendant therefore had an obligation to provide F.M. with the January IEP as his pendency placement unless the parties agreed to a different placement. See 20 U.S.C. § 1415(j) ("[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ."). The parties did not agree to the August IEP, nor does the evidence show that any other placement was discussed. Thus, Defendant was required to implement F.M.'s pendency placement, and its elementary school principal informed F.M.'s parents on September 4 that Defendant was prepared to do so. That an attempt to supplant F.M.'s pendency placement failed does not mean that his right to a FAPE was impeded, that his parents' opportunity to participate in the process was significantly impeded, or that he was deprived of educational benefits, especially where the pendency placement was nevertheless timely provided. The SRO therefore correctly determined that the procedural violations did not amount to a denial of FAPE in this case.

### C. Compliance with IDEA Substance

As previously explained, no objections to the substance of F.M.'s pendency placement, i.e. the January IEP, are before the Court. Moreover, Plaintiff states that "it was highly effective" and that "[n]either party disputes the appropriateness of that program." Pl.'s Mot. at 15; accord SRO Decision

12

at 16 n.6. The substance of F.M.'s pendency placement is therefore adequate to provide him a FAPE,[12] and the substance of the proposed August IEP was the same or better. See supra note 5 & accompanying text; see also T.Y., 584 F.3d at 419 ("'Educational placement' refers to the general education program . . . rather than the 'bricks and mortar' of the specific school."). The August IEP developed through the IDEA's procedures therefore was reasonably calculated to enable F.M. to receive educational benefits, even if the school at which it was ultimately to be implemented was

---

[12] IHO Briglio noted that "the parties . . . belatedly recognized that [F.M.'s] social/emotional and behavior issues included aggressive and violent conduct that required substantial intervention in excess of what was prescribed in the . . . 1/27/2010 IEP." Dkt. No. 16-14 ("IHO Decision"), at 18. He therefore found the January IEP "deficient and inappropriate for F.M. absent a behavior reduction plan that acknowledges the student's dangerous and aggressive behaviors and creates a plan to reduce these behaviors." Id. at 19. Because behavioral issues were not raised in the September Complaint or by Defendant, however, IHO Briglio was barred from addressing them. See 20 U.S.C. § 1415(f)(3)(B); R.E., 694 F.3d at 187-88 & n.4.

Moreover, an IHO or SRO has discretion to amend an IEP to provide omitted services only when the IEP otherwise adequately provides a FAPE. See R.E., 694 F.3d at 188 (distinguishing T.Y., 584 F.3d at 417, because the lack of certain services in the IEP at issue in T.Y. did not render that IEP inappropriate). Thus, even if F.M.'s behavioral issues had been properly presented to IHO Briglio, he could not have amended F.M.'s IEP to require certain services after finding that the omission of those services rendered the IEP inappropriate.

Finally, it appears that F.M.'s need for behavioral services became apparent only after the development and implementation of the January IEP. Because IHO Briglio's decision regarding the provision of these services was improper for the above reasons, the Court need not decide whether subsequent evidence of dangerous and aggressive behavior requiring supplemental services is an exception to the rule that "an IEP must be evaluated prospectively as of the time it was created" without the use of retrospective evidence. Id. The parties are advised, however, that failure to conduct a functional behavioral assessment when required, see N.Y. COMP. CODES R. & REGS. tit. 8, § 200.4(b)(1)(v), is "a serious procedural violation." R.E., 694 F.3d at 190. An IEP must provide for a behavioral intervention plan when a student's behavior impedes his or her learning or that of others. See N.Y. COMP. CODES R. & REGS. tit. 8, § 200.22(b)(2); R.E., 694 F.3d at 190-91; see also Alex R. ex rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. No. 221, 375 F.3d 603, 613 (7th Cir. 2004) ("An IEP that fails to address disability-related actions of violence and disruption in the classroom is not reasonably calculated to enable the child to receive educational benefits." (internal quotation marks omitted)).

uncertain.[13] Rowley, 458 U.S. at 206-07. The SRO therefore correctly annulled the IHO's finding that Defendant failed to offer F.M. a FAPE.

### D. Compensatory Benefits

The SRO and the IHO both denied Plaintiff compensatory benefits because of F.M.'s parents' conduct throughout these proceedings. Plaintiff here renews her request for compensatory benefits for the period she alleges F.M. was denied a FAPE. Because the Court holds that the SRO properly annulled the IHO's finding that Defendant failed to offer F.M. a FAPE, the Court denies Plaintiff's request for compensatory benefits.

### E. Attorney's Fees

Both Plaintiff and Defendant have requested leave to file motions for attorney's fees and related costs. Because the order Plaintiff appeals from is affirmed, her request is denied. Defendant's request is denied because, even if Defendant is a "prevailing defendant," the IDEA provides that a prevailing-defendant educational agency may be awarded attorney's fees only where the complaint or subsequent cause of action was filed or pursued frivolously or vexatiously. 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III); see Mr. L. v. Sloan, 449 F.3d 405, 407 n.2 (2d Cir. 2006) (Sotomayor, J.). This is not such a case.

---

[13] Plaintiff argues that Defendant's obligation to ensure F.M.'s pendency placement was available did not absolve Defendant of its responsibility to conduct an annual review of F.M.'s IEP. See N.Y. COMP. CODES R. & REGS. tit. 8, § 200.4(f) (requiring review and, if appropriate, revision of IEPs at least annually). Plaintiff is correct, but in this case three meetings were held to review F.M.'s program, and the September Complaint underlying this action concerns only issues regarding the potential implementation of the August IEP at Wildwood, and not issues about the August IEP itself. The Court therefore concludes that Defendant met its responsibility to perform an annual review.

14

**V. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the State Review Officer's decision is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. Nos. 15-16) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED**, that both parties' requests to file motions for attorney's fees are **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

Dated: February 28, 2013
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge